## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re:

RODNEY RAY VERMILIO,               Case No. 6:09-bk-17180-ABB
                                     Chapter 7

     Debtor.
_____/

OLD REPUBLIC NATIONAL TITLE
INSURANCE COMPANY,

     Plaintiff,                       Adv. Pro. No. 6:10-ap-00055-ABB

v.

RODNEY RAY VERMILIO,

     Defendant.
_____/

## <u>MEMORANDUM OPINION</u>

This matter came before the Court on the Amended Complaint (Doc. No. 7) filed by the Plaintiff Old Republic National Title Insurance Company against the Defendant/Debtor Rodney Ray Vermilio ("Vermilio") seeking a nondischargeability determination pursuant to 11 U.S.C. Sections 523(a)(2)(A), (a)(4), and (a)(6). The final evidentiary hearing was held on December 20, 2010 at which the parties and their respective counsel appeared. The parties submitted post-hearing briefs pursuant to the Court's directive (Doc. Nos. 44, 45).

Judgment is due to be entered in favor of Plaintiff for the reasons set forth herein. The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## **FINDINGS OF FACT**

### *Sale Closing*

Vermilio is in the construction business and has invested in real estate over the years buying and selling various properties in Central Florida. He is knowledgeable about real estate transactions, mortgage encumbrances, and the sale closing process having attended several real estate closings. This adversary proceeding arises from the sale of Vermilio's residential property located at 730 Walnut Avenue, Orange City, Florida 32763 in Volusia County (the "Property") to Edward G. Doroszkeiwicz ("Purchaser").

Vermilio owned the Property individually and it was encumbered by a perfected mortgage held by Mortgage Electronic Registration Systems, Inc., as nominee for the lender Paramount Financial, Inc., pursuant to the Mortgage and Promissory Note for $117,000.00 Vermilio executed on June 16, 2006.[1] The mortgage was subsequently assigned to Bayview Loan Servicing, LLC (hereinafter, the "Bayview Mortgage").[2]

Vermilio executed a Contract for Sale and Purchase on January 4, 2007 pursuant to which he agreed to sell the Property to Purchaser for $183,000.00 and to convey the Property unencumbered by any liens, except for liens for current and future real estate taxes.[3] The Property was encumbered by the Bayview Mortgage when Vermilio and Purchaser executed the Contract for Sale. No other mortgages encumbered the Property. Vermilio knew the Bayview Mortgage encumbered the Property and had to be satisfied in full at the sale closing for him to convey marketable title to the Purchaser. Vermilio,

---

[1] Pl's Ex. 1.
[2] Pl's Ex. 2.
[3] Pl's Ex. 3.

2

based upon the payoff of the Bayview Mortgage of approximately $126,000.00, was expecting to receive cash sale proceeds of approximately $30,000.00 at the closing.

QuickClose Title and Escrow, LLC was the closing agent and an agent of Plaintiff for the purpose of issuing title insurance commitments and title insurance policies. Hakan Tokatli ("Tokatli") was the principal of QuickClose. Vermilio and Tokatli knew each other as they had engaged in several commercial real estate ventures. Vermilio testified he had done millions of dollars of business with Tokatli.

QuickClose conducted the Property sale closing at its offices on January 31, 2007. Vermilio attended the closing and executed various closing documents including the: (i) HUD-1 Settlement Statement[4]; and (ii) Warranty Deed pursuant to which Vermilio, as grantor, warranted:

> [T]he Grantor hereby covenants with said Grantee that the Grantor is lawfully seized of said land in fee simple; that the Grantor has good right and lawful authority to sell and convey said land, and hereby warrants the title to said land and will defend the same against the lawful claims of all persons whomsoever; and that said land is free of all encumbrances, except taxes accruing subsequent to December 31, 2006.[5]

The Bayview Mortgage is not listed as an excepted encumbrance on the Property in the Warranty Deed.

Purchaser purchased an owner's title insurance policy through QuickClose, as Plaintiff's agent, at the closing.[6] Plaintiff issued to Purchaser a Commitment to Insure and an Owner's Policy of Title Insurance, Policy Number SDC 757350, insuring Purchaser against title defects with a policy limit of $183,000.00. The policy does not list the Bayview Mortgage as an exclusion from coverage. Plaintiff issued a lender's policy

---

[4] Pl's Ex. 4.
[5] Pl's Ex. 5.
[6] Pl's Exs. 10, 11.

to Novastar Mortgage, Inc. as Purchaser's lender insuring it against title defects in the amount of $146,400.00.

The executed HUD-1 Settlement Statement provided for the payoff of the Bayview Mortgage in the amount of $126,921.00 at line 504. Vermilio, after deduction of the mortgage payoff, a seller credit of $5,500.00, and customary closing costs, was to receive cash sale proceeds of $29,496.78.

QuickClose made two disbursement to Vermilio at the closing. It disbursed net cash proceeds of $29,496.78 to Vermilio and, contrary to standard closing procedure, did not issue the Bayview Mortgage payoff directly to the Bayview Mortgage holder, but issued check number 1081 in the amount of $126,921.00 made payable to Vermilio individually.[7]  Vermilio executed as part of the closing documents a Directive dated January 30, 2007 pursuant to which he directed QuickClose to:

> Disburse the Bank payoff shown on the HUD as payable to []Bayview Loan Servicing, LLC to [] me, as the Seller, Rodney R. Vermilio. I also agree to pay Bayview Loan Servicing, LLC directly and,
>
> I FURTHER CERTIFY that QUICK CLOSE TITLE AND ESCROW, LLC will forever be held harmless as to any recourse to the above, including all costs.

Vermilio accepted both disbursement checks. He knew the only funds he was entitled to retain were the net cash proceeds of $29,496.78. He knew he had to remit the $126,921.00 to the Bayview Mortgage holder in order to satisfy the Bayview Mortgage. The check issued by QuickClose states on its face it was a loan payoff for the Bayview Mortgage. Vermilio knew he was not entitled to those funds.

Vermilio did not remit the funds to the Bayview Mortgage holder. He deposited the check for $126,921.00 into his personal bank account at SunTrust Bank and used the

---

[7] Pl's Ex. 6.

funds for his personal use. The Bayview Mortgage was not satisfied at closing or from the check issued by QuickClose to Vermilio and it continued to encumber the Property. Vermilio did not advise anyone the Bayview Mortgage had not been satisfied. The Purchaser remained unaware the Property continued to be encumbered by the Bayview Mortgage until he received a foreclosure notice.

Purchaser made a claim against his Owner's Policy for the unsatisfied Bayview Mortgage. Plaintiff conducted an investigation which resulted in Plaintiff taking an assignment of the Bayview Note and Mortgage, paying Bayview $140,068.31 on November 6, 2008, and releasing the Bayview Mortgage as an encumbrance on the Property.[8] Bayview sent Plaintiff a refund check of $605.88 on January 9, 2005 for an overage payment of real estate taxes. The net amount paid by Plaintiff to Bayview was $139,462.43.

### Adversary Proceeding

Vermilio filed a Chapter 7 bankruptcy case on November 10, 2009. Plaintiff instituted this adversary proceeding against Vermilio seeking a determination the amount of $139,462.43, plus interest, is nondischargeable pursuant to 11 U.S.C. Sections 523(a)(2)(A), 523(a)(4), and 523(a)(6). Plaintiff brought this adversary proceeding pursuant to its right of subrogation contained in the Purchaser's Owner's Policy:

> Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant.
>
> The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect to the claim had this policy not been issued . . . .[9]

---

[8] Pl's Exs. 12, 13, 14, 15.
[9] Pl's Ex. 11, ¶13.

Vermilio testified he: (i) does not recall executing the Directive; (ii) did not read the closing documents; (iii) did not know he was obligated to pay the Bayview Mortgage; and (iv) believed the check for $126,921.00 from QuickClose to him was for payment of various debts owed to him by Tokatli. His testimony was not credible and is contradicted by the documentary evidence. Vermilio is sophisticated and experienced with real estate matters. He read and understood the closing documents he executed. He understood he was required to remit the $126,921.00 to Bayview to satisfy the Bayview Mortgage in order to convey marketable title to the Purchaser.

Vermilio, despite the promises he made in the Warranty Deed and Directive, did not intend to remit the $126,921.00 to Bayview and to transfer marketable title to the Property. He intended to take the $126,921.00 and use it for his personal gain to the detriment of the Purchaser and Plaintiff, which he did. Vermilio did not inform anyone of the unsatisfied Bayview Mortgage or attempt to return the $126,921.00.

Vermilio made false representations with the intent to deceive the Purchaser and Plaintiff when he executed the Warranty Deed warranting the Property was free of all encumbrances. He knew the Bayview Mortgage continued to encumber the Property and he did not intend to pay off the mortgage in order to transfer marketable title. He made false representations with the intent to deceive the Purchaser and Plaintiff when he executed the Directive directing QuickClose, as the Plaintiff's agent, to disburse the payoff for the Bayview Mortgage to him and stating in the Directive that he would pay Bayview directly. He had no intention of remitting the $126,921.00 to the Bayview Mortgage holder and used the funds for his personal gain.

Plaintiff relied on the false representations made by Vermilio when QuickClose completed the sale closing and when Plaintiff issued the Owner's Policy to Purchaser without an exception for the Bayview Mortgage. Plaintiff's reliance was justified because Vermilio represented he would pay Bayview directly. Plaintiff sustained a loss of $139,462.43 to satisfy and release the Bayview Mortgage. Plaintiff has established by a preponderance of the evidence the indebtedness of $139,462.43 is nondischargeable pursuant to Section 523(a)(2)(A) of the Bankruptcy Code.

Plaintiff, regarding its Section 523(a)(4) count, did not allege a fiduciary relationship or present evidence as to larceny. Plaintiff pled and established Vermilio committed embezzlement regarding the $126,921.00. Vermilio was entrusted with the Bayview Mortgage payoff funds of $126,921.00 pursuant to the Directive in which he falsely represented he would pay such funds to the Bayview Mortgage holder. Vermilio fraudulently appropriated the funds. His actions constitute embezzlement. Plaintiff has established by a preponderance of the evidence the indebtedness of $139,462.43 is nondischargeable pursuant to Section 523(a)(4) of the Bankruptcy Code.

Vermilio's actions in signing the Directive and Warranty Deed and appropriating the funds of $126,921.00 were deliberate and intentional. His failure to pay off the Bayview Mortgage was intentional and deliberate. His actions were willful and he knew they would result in the conveyance of the Property to the Purchaser encumbered by the Bayview Mortgage. The indebtedness of $139,462.43 owed to Plaintiff is the result of Vermilio's willful and malicious actions. Plaintiff has established by a preponderance of the evidence the indebtedness of $139,462.43 is nondischargeable pursuant to Section 523(a)(6) of the Bankruptcy Code.

## CONCLUSIONS OF LAW

The party objecting to the dischargeability of a debt pursuant to 11 U.S.C. Section 523(a) carries the burden of proof and the standard of proof is preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991). Objections to discharge are to be strictly construed against the creditor and liberally in favor of the debtor. Schweig v. Hunter (In re Hunter), 780 F.2d 1577, 1579 (11th Cir. 1986).

### *11 U.S.C. § 523(a)(2)(A)*

Section 523(a)(2)(A) provides a discharge pursuant to Section 727 does not discharge an individual from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—"

> false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A). Plaintiff must establish the traditional elements of common law fraud to prevail in a Section 523(a)(2)(A) action:   (1) Debtor made a false representation with the purpose and intent to deceive Plaintiff; (2) Plaintiff relied on the misrepresentation; (3) the reliance was justified; and (4) Plaintiff sustained a loss as a result of the misrepresentation. SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir. 1998); Fuller v. Johannessen (In re Johannessen), 76 F.3d 347, 350 (11th Cir. 1996). Plaintiff must establish each of the four common law fraud elements by a preponderance of the evidence. Grogan, 498 U.S. at 291; In re Wiggins, 250 B.R. 131, 134 (Bankr. M.D. Fla. 2000).

The cornerstone element in a Section 523(a)(2)(A) nondischargeability proceeding is a misrepresentation made with the intent to deceive the creditor. A creditor cannot establish non-dischargeability pursuant to Section 523(a)(2)(A) without proof of

8

reliance on intentional misstatements by the debtor. <u>City Bank & Trust Co. v. Vann</u> (<u>In re Vann</u>), 67 F.3d 277, 280 (11th Cir. 1995). A determination of fraudulent intent is an issue of fact and "depends largely upon an assessment of the credibility and demeanor of the debtor . . . ." <u>Equitable Bank v. Miller</u> (<u>In re Miller</u>), 39 F.3d 301, 305 (11th Cir. 1994). Intent is a subjective issue and a review of the totality of the circumstances is relevant in determining a debtor's intent. <u>Id.</u>

The creditor's reliance upon the debtor's false representation must be justified. <u>Field v. Mans</u>, 516 U.S. 59, 73-75 (1995); <u>In re Vann</u>, 67 F.3d at 283-84. A plaintiff must establish a causal link between the debtor's misrepresentation and the resulting loss sustained by the plaintiff. <u>Lightner v. Lohn</u>, 274 B.R. 545, 550 (M.D. Fla. 2002). "Proof of fraud in cases involving unfulfilled promises requires a plaintiff to prove that when a defendant made promises he knew he could not fulfill them or had no intention of fulfilling them." <u>In re Pupello</u>, 281 B.R. 763, 766 (Bankr. M.D. Fla. 2002).

### *11 U.S.C. Sections 523(a)(4) and (a)(6)*

Section 524(a)(4) of the Bankruptcy Code provides a debtor is not discharged from debts resulting from "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Embezzlement and larceny constitute separate Section 524(a)(4) causes of action and do not require a finding of fiduciary capacity. <u>McDowell v. Stein</u>, 415 B.R. 584, 594 (S.D. Fla. 2009). A plaintiff, however, must establish fraud or fraudulent intent. <u>In re Kelley</u>, 84 B.R. 225, 231 (Bankr. M.D. Fla. 1988). Plaintiff pled and presented an embezzlement cause of action.

"Embezzlement" is defined for dischargeability purposes as "the fraudulent appropriation or property by a person to whom such property has been entrusted, or into

whose hands it has lawfully come." In re Kelley, 84 B.R. at 231 (*quoting* Moore v. U.S., 160 U.S. 268, 269 (1895)).

Section 523(a)(6) of the Bankruptcy Code provides any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is nondischargeable. 11 U.S.C. § 523(a)(6). Plaintiff must establish by a preponderance of the evidence Vermilio:   (1) deliberately and intentionally; (2) injured Plaintiff or Plaintiff's property; by (3) a willful and malicious act. In re Nofziger, 361 B.R. 236, 242 (Bankr. M.D. Fla. 2006). Plaintiff must establish by a preponderance of the evidence the injury was intentional—that Vermilio intended the consequences of his act. Kawaauhau v. Geiger, 523 U.S. 57, 61-62 (1998). "The established law is clear that a debtor must commit some type of intentional tort directed against the claimant or his property in order for a court to find that the resulting damages are nondischargeable." In re Nofziger, 361 B.R. at 243.

### Analysis

Plaintiff has established by a preponderance of the evidence each of the elements of 11 U.S.C. Sections 523(a)(2)(A), (a)(4), and (a)(6). Vermilio fraudulently executed the Warranty Deed and the Directive knowing he did not intend to convey marketable title to the Property to the Purchaser and that he was going to take and use the Bayview Mortgage payoff funds of $126,921.00 for his own personal use. Vermilio embezzled the $126,921.00. His actions were deliberate, intentional, and malicious and caused injury to the Purchaser and Plaintiff. Plaintiff incurred an indebtedness of $139,462.43. Vermilio intended the consequences of his actions. Judgment is due to be entered in favor of Plaintiff and against Vermilio.

*Debtor's Objection*

Vermilio filed an Objection (Doc. No. 46) to Plaintiff's proposed order asserting Plaintiff impermissibly included an award of money damages to Plaintiff, the $139,462.43, because the liquidation of damages is a matter for the State Court to determine. The Objection is due to be overruled.

A Bankruptcy Court is empowered to hear and determine all core proceedings, which include determinations as to the dischargeability of particular debts, and "enter appropriate orders and judgments." 28 U.S.C. § 157(b)(1). Such judgments include money judgments for nondischargeable debts. Morrison v. Western Builders of Amarillo, Inc. (In re Morrison), 555 F.3d 473, 479-80 (5th Cir. 2009). Damages is a fundamental element of a Section 523 cause of action and this Court routinely enters nondischargeable judgments for specific monetary amounts in Section 523 matters.

Plaintiff included in its proposed Judgment an award of interest in the amount of $17,996.38. Plaintiff pled damages of $139,462.43 in its Amended Complaint; it did not plead or establish a basis for an award of interest. It is not entitled to an award of interest.

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that Vermilio's Objection (Doc. No. 46) to Plaintiff's Proposed Findings of Fact and Conclusions of Law (Doc. No. 44) is hereby **OVERRULED**; and it is further

**ORDERED, ADJUDGED and DECREED** that the relief sought in Plaintiff's Complaint (Doc. No. 1) is hereby **GRANTED** pursuant to 11 U.S.C. Sections 523(a)(2)(A), (a)(4), and (a)(6); and it is further

11

**ORDERED, ADJUDGED and DECREED** that the indebtedness of $139,462.43 owed by Vermilio to Plaintiff is **NONDISCHARGEABLE** pursuant to 11 U.S.C. Sections 523(a)(2)(A), (a)(4), and (a)(6).

A separate Judgment consistent with these Findings of Fact and Conclusions of Law shall be entered contemporaneously.

Dated this 11th day of February, 2011.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge